Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with some modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Defendant-employer is self-insured with GAB Robins as the servicing agent.
4. Plaintiff's alleged injury by accident occurred on 19 July 1997.
5. Plaintiff's average weekly wage is to be determined by a properly submitted Form 22 Statement of Days Worked and Earnings of Injured Employee.
6. The following exhibits were stipulated into evidence:
(a) Industrial Commission filings:
(1) Form 18 Notice of Accident of Employer.
 (2) Form 22 Statement of Days Worked and Earnings of Injured Employee.
(3) Form 61 Denial of Workers' Compensation Claim.
(4) Form 33 Request that Claim be Assigned for Hearing.
 (5) Form 33R Response to Request that Claim be Assigned for Hearing.
 (6) Order by Executive Secretary Tracey H. Weaver filed 26 February 1998.
(b) Medical records.
(1) Columbia Brunswick Hospital. (2 pp.)
(2) Expressed Care. (1 p.)
(3) Dr. Richard Leighton. (12 pp.)
(4) Crawford Rehab reports. (10 pp.)
(c) Recorded statement of Lhonda Milliken. (7 pp.)
(d) Discovery pleadings: (97 pp.)
 (1) Plaintiff's Answer to Interrogatories and Request for Production. (53 pp.)
 (2) Plaintiff's Supplemental Answers to Interrogatories and Request for Production. (2 pp.)
 (3) Defendants' Answers to Interrogatories and Request for Production. (42 pp.)
(e) Employee Counseling forms. (3 pp.)
(f) Employee Injury Call-In Data Sheet. (2 pp.)
(1) NCWC Physician's Selection Form.
7. The issues to be determined are:
 (a) Did plaintiff sustain an injury by accident arising out of and in the course and scope of her employment with defendant-employer on 19 July 1997; and
(b) If so, to what benefits is plaintiff entitled?
 * * * * * * * * * * *
Based upon all of the competent and credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a thirty year old married female high school graduate. Plaintiff had three children living at home, ages two, four, and six. Plaintiff had been employed with defendant-employer since graduation from high school in 1986.
2. Plaintiff began her employment with defendant-employer at the Supply, North Carolina, restaurant on or about June 1996 as a service coordinator. Plaintiff's responsibilities as a service coordinator included running shifts, coordinating schedules, assisting with preparation of food, and helping out on the lines wherever she was needed. Plaintiff worked a forty hour week, earning $6.75 per hour.
3. On 19 July 1997, plaintiff was working in her capacity as a service coordinator when she alleges she sustained an injury to her left knee during an unusually busy lunch shift. While carrying roast beef from the refrigerator to the slicer, plaintiff walked between two co-workers, Cheryl Stanley and Adrienne Smith. Plaintiff testified that she slipped and twisted her knee as she did so.
4. The floor in the restaurant had recently been swept and, according to plaintiff, was "greasy." Plaintiff's co-worker, Ms. Smith, slipped on the floor at least once in the past, even though she was wearing special slip-resistant shoes. However, Ms. Smith had no recollection that there was grease on the floor or that the floor was slippery on 19 July 1997. Ms. Smith did not remember plaintiff slipping on 19 July 1997 or on any other day.
5. Plaintiff indicated that 19 July 1997 was the busiest lunch shift that she had ever experienced while employed with defendant-employer.
6. Plaintiff continued to work her shift and did not report the injury until the next day, 20 July 1997, when she advised the manager, Penny Snow.
7. Ms. Snow directed Cheryl Stanley, assistant manager and plaintiff's sister-in-law, to fill out an accident report. Ms. Stanley assisted plaintiff with completing both the Workers' Compensation North Carolina Physicians Selection Form and the Claims Call-In Data Sheet.
8. On the Workers' Compensation North Carolina Physicians Selection Form completed on 18 July 1997, plaintiff described that she injured her knee when she moved between two other workers, bent her leg and twisted her knee. Plaintiff did not describe any slipping incident or other unusual occurrence.
9. The Claims Call-In Data Sheet was completed in the presence of and with the assistance of plaintiff. Under the section which asked for a full description of the accident, Ms. Stanley wrote in conjunction with plaintiff's description, ". . . put sandwich in box[,] turned around[,] went in between two other employees[,] bent her leg and twisted it." Again, plaintiff did not describe to Ms. Stanley any slipping incident or other unusual occurrence.
10. Plaintiff was initially seen by Dr. Kirtley at Express Care and was referred to an orthopedic physician for further evaluation.
11. On 25 July 1997, plaintiff presented to Richard Leighton, D.O., for examination and evaluation. Plaintiff reported that her injury occurred on 19 July 1997 when she attempted to maneuver between two employees and she felt a painful pop in her left knee and felt her knee twist. Plaintiff did not report a slipping incident or other unusual occurrence to Dr. Leighton during her examination.
12. Paige Mims took a recorded statement from plaintiff on 14 August 1997. When asked to describe in her own words how the accident occurred, plaintiff responded as follows:
 "I was in the back line cooking, I had went to put roast beef in the box, we were real busy and when I went to go back to the roast beef slicer, there was a girl at the grill, one at the table and I went to go in between their bodies, I bent my legs and when I went in between them, my knee twisted and it popped."
Once again, plaintiff failed to describe slipping on the floor or any other unusual occurrence.
13. Plaintiff kept a personal calendar in which she described the events that transpired on 19 July 1997. The entry for 19 July 1997 described an injury to plaintiff's left knee that is consistent with her recorded statement, the descriptions on both her NCWC Physician's Selection Form and Claims Call-In Data Sheet, and her medical records. Plaintiff did not write in her calendar about any unusual occurrence or a slipping incident on that date.
14. Defendant-employer completed a Form 19 Employer's Report of Injury to Employee. In describing the events which led to the injury, defendant-employer wrote, "The employee alleges that while she was walking away from the grill area to put a sandwich in the box, and [sic] she twisted her knee. She does not know how she did it unless she just turned it the wrong way."
15. After plaintiff was examined and evaluated by Dr. Leighton on 25 July 1997, she was advised that she could return to work with sedentary restrictions of standing and walking for no more than two hours during the day and sitting for no more than four to six hours at a time. Plaintiff advised Ms. Snow of the work restrictions and defendant-employer provided a sedentary job within plaintiff's restrictions. Plaintiff was assigned to the drive-thru window where she could sit on a stool and take orders and collect money from customers. Plaintiff did not make any complaints of pain or problems during her scheduled shift on 26 July 1997.
16. Plaintiff did not return to work for defendant-employer because she alleges her leg was swollen from her thigh down to her foot, and she was incapable of performing the sedentary job provided by defendant-employer.
17. Plaintiff again presented to Dr. Leighton on 5 August 1997. Dr. Leighton recommended plaintiff continue in a sedentary-type job for the next two weeks. Plaintiff again asserted she was unable to return to work at this time due to ongoing swelling and problems with her lower extremity. Dr. Leighton did not observe any swelling in plaintiff's lower extremity. According to Dr. Leighton, if there had been any swelling he would have made a record of it in his medical notes.
18. Plaintiff returned to Dr. Leighton on 18 August 1997. Plaintiff was referred to physical therapy and also advised that she should return to work. Plaintiff asserted that she was unable to return to work due to swelling in her lower extremity and that she was physically unable to perform the sedentary job provided by defendant-employer. During his treatment and care of plaintiff, Dr. Leighton did not observe any swelling in her lower extremity.
19. Plaintiff's complaints of pain were completely out of proportion to the objective findings.
20. Plaintiff's knee was never swollen, and she was capable of performing at least sedentary work by 5 August 1997. Plaintiff's refusal to return to work was unjustified.
21. At the hearing before the deputy commissioner, plaintiff asserted that she remained unable to work due to continued swelling and problems with her lower extremity. However, Ms. Stanley saw plaintiff approximately four to five times a month and did not notice any visible disability or problems with plaintiff's left leg since August 1997. Plaintiff was seen at a carnival getting into a canvas bag and going down a slide ride.
22. On 8 August 1997, Ms. Snow saw plaintiff at a church vacuuming the premises and running after her children. Ms. Snow also witnessed plaintiff at the carnival riding bumper cars in April 1998. She saw plaintiff again in June of 1998 picking her children up at school. At that time, plaintiff did not exhibit any visible disability or problems with respect to her left leg.
23. At all times following her knee injury, plaintiff was physically able to perform the sedentary job provided by defendant-employer.
24. At the time of the hearing before the deputy commissioner, plaintiff had not made an effort to return to work for defendant-employer or to find alternative employment.
25. The competent evidence of record establishes that the lunch shift on 19 July 1997 was a normal weekend lunch shift for the restaurant. The restaurant collected about the average amount of money earned for a Saturday lunch shift. It is normal during a lunch shift for employees to maneuver around each other in order to perform their job duties and functions.
26. The report of injury indicated in the NCWC Physicians Selection Form, the Claims Call-In Data Sheet, plaintiff's recorded statement, plaintiff's entry in her diary on 19 July 1997, the Form 19 Employer's Report of Injury to Employee, the history in the medical records which were corroborated by Dr. Leighton, and the testimony of plaintiff's former co-workers, were all consistent with the fact that plaintiff did not slip when she injured her left knee. Plaintiff's testimony to the contrary is not credible.
 * * * * * * * * * * *
The foregoing findings of fact and conclusions of law engender the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury to her knee as the result of unusual circumstances or conditions of her employment, or as a result of an unlooked for or untoward event. G.S.97-2(6); Pittman v. Inco, Inc., 78 N.C. App. 134,336 S.E.2d 637 (1985).
2. Plaintiff did not sustain an injury by accident arising out of and in the course and scope of her employment with defendant-employer on 19 July 1997. G.S. 97-2(6).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation under the Act is DENIED.
2. The parties shall bear their own costs.
 S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER